UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY HENDRIX,<br><br>    Plaintiff,<br><br>v.<br><br>KRIS KINT, et al.,<br><br>    Defendants. | Case No. 18-cv-06644-EMC<br><br>**ORDER OF DISMISSAL**<br><br>Docket No. 1 |

## I.     INTRODUCTION

Tony Hendrix, an inmate at San Quentin State Prison, filed this *pro se* civil rights action under 42 U.S.C. § 1983 complaining that excessive force was used during his arrest. His complaint is now before the Court for review under 28 U.S.C. § 1915A.

## II.     BACKGROUND

Mr. Hendrix's complaint alleges that he was subjected to excessive force when he was shot by a police officer during his early morning arrest on June 28, 2016. The Court will describe the allegations of the complaint and then summarize state court proceedings because there is a criminal conviction in place that is incompatible with the legal claim Mr. Hendrix wants to pursue here.

A.    <u>Allegations of Complaint</u>

Mr. Hendrix alleges in his complaint that Antioch police officers Kint and Hynes arrived at his home at about 2:00 a.m. on June 28, 2016, in response to a call from his wife, Daphine. Docket No. 1 at 3. Mrs. Hendrix had been "accidentally locked out of their home" and Mr. Hendrix, who was inside sleeping, was unresponsive to her efforts to get into the house. *Id.* The two police officers began knocking on windows in an attempt to awaken Mr. Hendrix; he awoke

to "aggressive knocking, asking who it was, only to get no response." *Id.* Mr. Hendrix feared it was someone who meant to harm him and "cautiously stepped out of his home *with his weapon at his side and pointed downward by his leg. Without warning, being hidden behind a tree to the right of plaintiff, Officer Kint immediately fires shots;* two of which [hit Mr. Hendrix] in the right torso and right upper thigh." *Id.* at 3-4 (emphasis added).

Mr. Hendrix sues Antioch police officers Kint and Hynes, as well as the Antioch Police Chief, the City of Antioch, and the County of Contra Costa for violations of his Eighth Amendment right to be free from excessive force.[1]

B. The Criminal Conviction

Based on that same incident that occurred in the early hours of June 28, 2016, Mr. Hendrix suffered a criminal conviction. Following a jury trial, he was convicted of assault with a firearm on a peace officer, *see* Cal Penal Code § 245(d)(1), and exhibiting a firearm in the presence of an officer, *see* Cal. Penal Code § 417(c), and was found to have personally used a firearm during the commission of the assault, *see* Cal. Penal Code § 12022.53(b). *See People v. Hendrix*, 2018 WL 36894931, *1 (Cal. Ct. App. Aug. 3, 2018). He was sentenced to a total prison term of 14 years. *Id.*

The California Court of Appeal described the incident rather differently than does Mr. Hendrix. As relevant here, the California Court of Appeal described evidence at trial that the police went to the Hendrix residence in response to a call from Mrs. Hendrix that she had an argument with Mr. Hendrix and had been locked out of the home. *Id.* At the home, the two officers knocked on the front door as well as windows, but received no response. *Id.* Mrs. Hendrix declined to leave the area, although the officers encouraged her to do so. *Id.* The following then occurred:

> Daphine [i.e., Mrs. Hendrix] went back up to the house to try get in through the front door or window. [Officer] Kint was watching from the walkway, and [Officer] Hynes was taking cover behind a

---

[1] Although Mr. Hendrix pleads the claims as Eighth Amendment claims, the claims arise under the Fourth Amendment. Claims of excessive force during an arrest are analyzed under the reasonableness standard of the Fourth Amendment. *See Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642 (9th Cir. 2018).

2

> truck on the street. Then, appellant "barge[d]" out of the apartment, yelling and screaming. Appellant and Daphine were arguing "intently," and although Kint could not hear their words, he believed the dispute was about to get physical.
>
> Kint decided he needed to separate the couple to prevent a physical fight. As Kint approached them, however, he noticed that appellant was holding a gun. *Appellant was screaming and waiving the gun around in an angry fashion. Kint yelled out to appellant. At trial, he could not recall whether he yelled "police" or "drop the gun," or both. Appellant did not make a verbal response, but shifted his attention to Kint and began to advance with his gun pointed at the officer. Then Kint drew his weapon, moved so he was not a stationary target, and fired five or six shots.* Appellant fell to the ground on his stomach and laid motionless with the gun by his right hand.

*Id.* at *1-2 (emphasis added; first three bracket sets added).

## III. **DISCUSSION**

A. Review Of Complaint

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at § 1915A(b).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Excessive force claims which arise in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). To determine whether a use of force was objectively reasonable, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing government interests at stake." *Id.* at 396. This "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade

arrest by flight." *Id.* "The second of these so-called *Graham* factors—whether there is an immediate threat to the safety of the arresting officer or others—is the most important." *Ames v. King County, Washington*, 846 F.3d 340, 348 (9th Cir. 2017). "When an individual points his gun 'in the officers' direction,' the Constitution undoubtedly entitles the officer to respond with deadly force." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013). If there was not a criminal conviction in place, a claim would be stated against at least the shooting officer and perhaps other defendants based on Mr. Hendrix's allegation that officer Kint, without warning, shot him while he had his gun at his side and pointed toward the ground. But the conviction changes things.

A prisoner may not bring an action for damages under § 1983 for a wrongful conviction unless that conviction has been determined to be wrongful. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A conviction may be determined to be wrongful by, for example, being reversed on appeal or being set aside when a state or federal court issues a writ of habeas corpus. *See id.* The *Heck* rule also prevents an inmate from bringing an action that -- even if it does not directly challenge the conviction -- would imply that his conviction was invalid. The practical importance of this rule is that the conviction must be attacked successfully *before* the § 1983 action for damages may be filed.

*Heck* generally does not bar claims for use of excessive force, even if the excessive force was used during the course of an arrest, because such claims rarely imply the invalidity of most subsequent convictions or sentences. For example, *Heck* will not bar a claim for excessive force where the force used can be separated from the resisting behavior on which the conviction rests. *See, e.g., Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (conviction for resisting arrest did not result in *Heck* bar to claim for excessive force during arrest "when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction'"); *Smith v. City of Hemet*, 394 F.3d 689, 696-98 (9th Cir. 2005) (conviction for resisting arrest did not result in a *Heck* bar to excessive force claim "because the excessive force may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction"); *Smithart v. Towery*, 79 F.3d 951, 952-53 (9th Cir. 1996) (conviction, pursuant to guilty plea, for assault with a deadly weapon (i.e., a truck driven at police)

4

did not result in *Heck* bar to excessive force claim because the force allegedly was used after plaintiff exited his vehicle). Similarly, *Heck* will not bar an excessive force claim where the conviction rests on conduct that is unrelated to the suspect's interaction with the police. *See, e.g., Guerrero v. Gates*, 442 F.3d 697, 703-04 (9th Cir. 2006) (*Heck* did not bar excessive force claim because conviction was for possession of narcotics, and the use of excessive force to effectuate the arrest "does not preclude the possibility that Guerrero was still guilty of possession of narcotics"). *Heck* also will not bar an excessive force claim where one cannot determine the specific behavior on which the conviction rests, as may occur with a guilty plea. *See, e.g., Reese v. County of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) (claim that officer used excessive force by shooting suspect was not *Heck*-barred due to existence of conviction for drawing or exhibiting a deadly weapon in a rude, angry, or threatening manner because that conviction was pursuant to a no-contest plea and could have been based on suspect brandishing a knife at the police *or* exhibiting a knife to his neighbor before the police even arrived); *Smith*, 394 F.3d at 698 (conviction, pursuant to a guilty plea, for resisting arrest did not result in *Heck* bar to excessive force claim because the record did not reflect which acts underlay his plea).

But when the nature of the conviction is plainly inconsistent with the sort of excessive force claim being asserted, *Heck* will apply. The case most instructive for present purposes is *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002), where two robbers (Soly and Cunningham) engaged in a shootout with police, leaving Soly dead and Cunningham injured. Cunningham was later tried and convicted of three counts of attempted murder of the police officers by firing a weapon at them, as well as the murder of Soly by provoking the police to shoot at the getaway car. *Id.* at 1152. Cunningham filed a civil rights action, alleging the police used excessive force on them by jamming their car after the robbery and firing on them without the police identifying themselves as police. *Id.* at 1152-53. The Ninth Circuit noted that "an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted,'" and agreed with the district court that "Cunningham's claims are barred under Heck because the complaint disputed several factual issues that the state jury had already resolved against him." *Cunningham*, 312 F.3d at 1154. Thus, Cunningham's claims were

"squarely barred to the extent they depend on the theory that he did not provoke" the shootout because the jury instructions required the jury to find that he intentionally provoked the deadly police response and did not act in self-defense in order to convict him of felony murder. *Id.* Cunningham's claim that the police responded with excessive force to Cunningham's provocative act of firing on the police was barred by *Heck* because, in convicting Cunningham, the jury necessarily concluded that the police response was a natural consequence of Cunningham's provocative act. *Id.* at 1155. *Cunningham* teaches that an excessive force claim that is interwoven with the § 1983 plaintiff's behavior that led to his conviction can be barred by *Heck* if one can look at the jury verdict to see what the jury had to find to convict.

Another case in which the § 1983 excessive force claim was rejected due to the conviction in place is *Curry v. Baca*, 371 F. App'x 733 (9th Cir. 2010), where the Ninth Circuit concluded that *Heck* barred an excessive force claim due to the plaintiff's conviction of two counts of assault on a peace officer with a semi-automatic firearm. "To find Curry guilty, the jury necessarily had to decide that the officers did not use excessive force 'at the time of the arrest.'" *Id.* at 733. The court rejected the plaintiff's efforts to separate his behavior from the forceful response. "The allegedly excessive police conduct here—shooting Curry while pursuing him—falls within the temporal scope of the assault because the moment Curry pointed his firearm at the officers, they began pursuing him. Therefore, the officers' use of force 'is part of a single act for which the jury found that [Curry bears responsibility.'" *Id.* at 734.

In the present case, Mr. Hendrix's not-yet-invalidated conviction under California Penal Code § 245(d)(1), prevents him from pursuing his § 1983 claim that he was subjected to excessive force. To understand why *Heck* bars Mr. Hendrix's claim, one must consider the particular crime of which he was convicted.

California Penal Code § 245(d)(1) provides: "Any person who commits an assault with a firearm upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for four, six, or eight years."

6

The pattern jury instruction describes the requirements for a jury to find a defendant guilty of the § 245(d)(1) offense:

> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1A. The defendant did an act with a firearm that by its nature would directly and probably result in the application of force to a person;
>
> 1B. The force used was likely to produce great bodily injury;
>
> 2. The defendant did that act willfully;
>
> 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone;
>
> 4. When the defendant acted, he had the present ability to apply force with a deadly weapon to a person;
>
> 5. When the defendant acted, the person assaulted was lawfully performing his duties as a peace officer;
>
> AND
>
> 6. When the defendant acted, he knew, or reasonably should have known, that the person assaulted was a peace officer who was performing his duties.

Judicial Council Of California Criminal Jury Instruction 860, Judicial Council Of California Criminal Jury Instruction 860 (CALCRIM 860).

Mr. Hendrix's claim that officer Kint shot him without warning while he (Hendrix) held and kept his gun pointed down and by his side is incompatible with Mr. Hendrix's conviction for assault on a peace officer based on that same event. Mr. Hendrix essentially claims that he was shot despite posing no threat. However, in order to have been convicted of an assault, Mr. Hendrix had to do an "act with a firearm that by its nature would directly and probably result in the application of force to a person," CALCRIM 860; that is inconsistent with him only holding a gun by his side and pointed downward. Also, in order for Mr. Hendrix to have been convicted of the assault on officer Kint, officer Kint had to be "lawfully performing his duties as a peace officer," *id.*; that is incompatible with officer Kint shooting Mr. Hendrix while Mr. Hendrix held a gun at his side and pointed at the ground.

A determination in this case that officer Kint used excessive force on Mr. Hendrix

therefore would imply that Mr. Hendrix's conviction under California Penal Code § 245(b)(1) was invalid. Success on Mr. Hendrix's claim that he was shot by officer Kint while posing no danger to him would necessarily imply the invalidity of Mr. Hendrix's conviction for assault with a firearm on a peace officer that is based on the same interaction with police. *Heck* therefore bars the excessive force claim.

The action will be dismissed. The dismissal of this action pursuant to the *Heck* rule is without prejudice to Mr. Hendrix filing a new action asserting his claims if his conviction is ever set aside, such as by being reversed on appeal.

If Mr. Hendrix wants to challenge his state court conviction in federal court, the exclusive method by which to do so is to file a petition for writ of habeas corpus under 28 U.S.C. § 2254, after his direct appeal is finished and after he exhausts state court remedies for all the claims in such a petition.

### IV. CONCLUSION

For the foregoing reasons, this action is **DISMISSED** for failure to state a claim upon which relief may be granted.

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: April 16, 2019

EDWARD M. CHEN
United States District Judge

8